FILED
2018 Mar-06  PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| Damien Singleton, Michael James, Tony Gee, and Milton Dudley, | ) ) ) ) |
| Plaintiff, | C.A. No.: ) ) ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| Jefferson S. Dunn, Commissioner of the Alabama Department of Corrections, in his individual capacity; Dewayne Estes, Warden of St. Clair Correctional Facility in his individual capacity; Fictitious Defendants A-E who are those persons employed by the Alabama Department of Corrections on September 2, 2016, whose duty included the supervision of the Department of Corrections employees at the St. Clair Correctional Facility and whose jobs and duty assignments included protection of prisoners from unjustified and unlawful treatment by prison guards, whose names and addresses are otherwise unknown to the Plaintiff at this time but whose names and addresses will be added hereto by amendment when ascertained. These Defendants are collectively hereinafter referred to as "Supervisor Defendants"; and Fictitious Defendants F-Q are those persons employed as guards | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

1

| | |
|---|---|
| on September 2, 2016 by the Alabama Department of Corrections at the St. Clair Correctional Facility whose names and identities are otherwise unknown to the Plaintiff at this time but whose names and addresses will be added hereto by amendment when ascertained. These Defendants are collectively hereinafter referred to as "Prison Guard Defendants", | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | |

## **COMPLAINT**

COME NOW the Plaintiffs, Damien Singleton, Michael James and Milton Dudley, and state as follows for their Complaint against Jefferson S. Dunn, Commissioner of the Alabama Department of Corrections, in his individual capacity; Dewayne Estes, Warden of St. Clair Correctional Facility ("St. Clair") in his individual capacity; St. Clair Correctional Facility; Fictitious Defendants A-E who are those persons tasked with supervising employees who are employed who are those guards at the St. Clair Correctional Facility, in their individual capacities, and Fictitious Defendants F-Q guards employed by St. Clair Correctional Facility, in their individual capacities.

# I.
# PARTIES

1.	The Plaintiff, Damien Singleton ("Plaintiff") is a 40 year old male whose domicile is Jefferson County, Alabama, and who is currently an inmate incarcerated at the St. Clair Correctional Facility.

2.	The Plaintiff, Michael James is a 30 year old male whose domicile is Jefferson County, Alabama, and who is currently an inmate incarcerated at the St. Clair Correctional Facility.

3.	The Plaintiff, Milton Dudley is a male over the age of 19 years old whose domicile is Jefferson County, Alabama, and who is currently an inmate incarcerated at the St. Clair Correctional Facility.

4.	The Plaintiff, Tony Gee, is a male over the age of 19 year old whose domicile is Jefferson County, Alabama, and who is currently an inmate incarcerated at the St. Clair Correctional Facility.

5.	Defendant Jefferson S. Dunn is the Commissioner of the Alabama Department of Corrections.

6.	Dewayne Estes is the Warden of the St. Clair Correctional Facility.

7.	Fictitious Defendants A-E who are those persons employed by the Alabama Department of Corrections on September 2, 2016, whose duty included the supervision of the Department of Corrections employees at the St. Clair Correctional Facility and whose jobs and duty assignments included protection of

prisoners from unjustified and unlawful treatment by prison guards, whose names and addresses are otherwise unknown to the Plaintiff at this time but whose names and addresses will be added hereto by amendment when ascertained. These Defendants are collectively hereinafter referred to as "Supervisor Defendants".

8. Fictitious Defendants F-Q are those persons employed on September 2, 2016 as guards by the Alabama Department of Corrections at the St. Clair Correctional Facility whose names and identities are otherwise unknown to the Plaintiff at this time but whose names and addresses will be added hereto by amendment when ascertained. These Defendants are collectively hereinafter referred to as "Prison Guard Defendants".

## II.
## FACTS

9. On approximately September 2, 2016, a tornado struck the St. Clair Correctional Facility. During the storm in question, B-block's roof, plumbing and electrical systems were severely damaged.

10. The St. Clair Correctional Facility is organized into different "blocks" where inmates are held based upon differing criteria.

11. Cell Block B is a segregation dorm designed when it is fully operational to hold at least 12 inmates separate from the general population.

12. Following an assault at the St. Clair Correctional Facility on approximately October 6, 2016, approximately 12 potential inmate

witnesses/suspects in the assault were detained based upon the suspicion that they were either involved in the assault or were witnesses thereto. The decision was made by Dunn, Estes, and supervising Defendants to place the Plaintiffs and other inmates into segregation in Cell Block-B while the investigation into the assault was conducted. The incarceration in Cell Block B was supposed to last for 72 hours, but ended up lasting for as long as six months. Said Defendants were aware of the dangerous and inhumane conditions in Cell Block B and the danger of harm to the Plaintiffs, but were deliberately indifferent to the harm to Plaintiffs from being incarcerated there.

13. Prior to the Plaintiffs being placed in Cell Block B, no inmates had been housed in B Block for several weeks because of damage caused to it by the tornado. While in the severely damaged Cell Block B, the Plaintiffs were not allowed to participate in any vocational or educational programs nor were they allowed to attend any therapy sessions such as substance abuse classes.

14. None of the Plaintiffs were ever charged with any wrongdoing in the assault. The Plaintiffs were never given any update on the investigation while they languished in the condemned cell block.

15. Cell Block B was not cleaned after being exposed to the elements in the storm. The conditions in Cell Block B were inhumane and constitutionally unacceptable for housing humans and uncivilized when the Plaintiffs were placed

in Cell Block B. There was, in addition to toilet fifth and a complete lack of sanitation and fresh water, rat and insect infestation which made the Cell Block B unfit and dangerous for human habitation.

16. The living conditions in B-Block following the storm were never acceptable for human habitation and only continued to deteriorate because of the lack of toilet and other sanitary needs such as clean water.

17. The cells that the Plaintiffs were placed in had the following deficiencies and problems:

    a.    Parts of the roof were missing due to the tornado;

    b.    Toilets that did not flush and would overflow;

    c.    Sinks did not have running water;

    d.    Leaky ceilings;

    e.    Electrical fires and

    f.    A lack of air circulation.

18. Furthermore, less stable and unsupervised inmates caused a number of problems preventing humane conditions of life such as setting mattresses on fire and making excessive noise.

19. Due to the damage to the roof, water constantly ran down the walls in the cells, which caused the inmates to be in a constant wet environment. The

structural damage to the roof caused the cell block to almost always be either hot and humid or exceedingly cold.

20. The combination of electrical fires, burning mattresses, and poor circulation caused the Plaintiffs housed while in Cell Block B to require breathing treatments from the nursing staff.

21. The Plaintiffs had to contend with inhumane unsanitary conditions in that the toilets in the cells in which they were held would not flush and overflowed.

22. The Plaintiffs did not have access to clean water and were unable to engage in simple sanitary matters such as maintaining minimum hygiene requirements and having no fresh water to drink.

23. Despite complaining from the beginning of their incarceration in Cell Block B, Plaintiffs were not given any relief until they were released from incarceration in Block B in approximately March of 2017.

24. None of the Plaintiffs were able for months on end to continue with their education while they were held in Cell Block B.

25. Plaintiff Michael James was not allowed to transfer to a lower security prison as he would otherwise have been allowed to do based solely on being in segregation because he was "suspected" of being involved in an assault and battery. He was subsequently cleared.

26. Plaintiffs aver that the Defendants treated their serious medical needs with deliberate indifference and refused to provide medical relief and help which constituted the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment of the United States Constitution. The indifference was manifested by Defendants in their response to the Plaintiffs' needs and by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the medical treatment once prescribed, all in violation of 42 U.S.C. § 1983.

27. Plaintiffs aver that while they were incarcerated in Cell Block B under these conditions, they were made sick and sore, and suffered constantly from colds, bronchitis, and other respiratory problems for which they did not receive adequate medical treatment.

28. Plaintiffs aver that they are each entitled to recover $100,000 from Defendants for the humiliation, pain and suffering they endured while being forced by Defendants to live in inhumane conditions in Cell Block B.

29. As a proximate result of the incarceration in Cell Block B under the conditions described herein, Plaintiffs were injured and damaged, made sick and sore, received inadequate medical treatment, and were proximately caused to sustain mental anguish by making them live in inhumane conditions.

### III.
### CAUSES OF ACTION

### COUNT I

## 42 U.S.C. § 1983 Claims

30. The Plaintiffs re-allege and reiterate each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

31. Defendants Dunn, Estes, and the supervisory Defendants are liable to Plaintiff in their individual capacities under the theory of supervisory liability. Under 42 U.S.C. § 1983, supervisory liability occurs either when the supervisor personally participates in a constitutional violation or when there is a causal connection between actions of the supervising official and the constitutional deprivation. Defendants Dunn, Estes, and the supervisory Defendants violated both of those conditions proximately injuring and damage's Plaintiffs.

32. This complaint alleges the violation of clearly established constitutional rights of the Plaintiffs based on the applicable law being clearly established at the time of the challenged action. The complaint alleges the violation of rights. A complaint cannot be dismissed on the claim of qualified immunity if the complaint alleges the violation of a clearly established constitutional right.

33. Supervisory Dunn, Estes, and Defendants are liable under 42 U.S.C. § 1983 when there is a causal connection between the actions of the said Defendants and the constitutional deprivation. The causal connection is established when a history of abuse puts the responsible Defendants on notice of the need to correct

9

the constitutional deprivation and he does not do so. The substantial risk to the health and dignity of the Plaintiffs from being housed for months in Cell Block B put Defendants Dunn and Estes on such notice with regard to Plaintiffs.

34. The Defendants, separately and severally, were deliberately indifferent to the health, safety, and constitutional rights of the Plaintiffs. The term "deliberate indifference" for purposes of a prisoner's claims under 42 U.S.C. § 1983 requires a showing that Defendants Dunn, Estes, A-E, and F-Q that were subjectively aware of the risk to the prisoner. The Defendants were "deliberately indifferent" to a substantial risk of serious harm to Plaintiffs and thereby violated their Eighth Amendment rights. The causal connection is established in this case because Supervisors Dunn, Estes, and the Defendants custom policy of confining Plaintiffs in Cell Block B resulted in deliberate indifference to constitutional rights. The facts support an inference that the said Defendants directed subordinates to act unlawfully or knew that the subordinates were acting unlawfully and failed to stop them from doing so. The said Defendants acted with deliberate indifference when they disregarded a risk of harm of which he was actually aware. Plaintiffs have established deliberate indifference by alleging that the Defendants were objectively aware of a risk of serious harm, recklessly disregarded the seriousness of the harm, and the conduct of the said Defendants was more than merely negligent. The said Defendants as policy-making administrators, are liable for the constitutional

deprivations caused by their subordinates because they exhibited such a degree of indifference to compliance with their policies as to demonstrate that they did not base their actual administrative decisions or actions on the professional judgments embodied in the policy.

35. The Defendants Dunn, Estes, and the supervisory Defendants proximately caused the Plaintiffs to be injured and damaged by denying them their constitutional rights and by denying them the right to effective medical treatment. Moreover, the said Defendants, by housing the Plaintiffs in inhumane conditions, caused the Plaintiffs to be made sick and sore, and to suffer from various diseases, such as colds, bronchitis, and other breathing problems, caused the Plaintiffs to suffer mental anguish by making them live in inhumane conditions. Plaintiffs have been permanently damaged as a proximate result of exposure to the aforesaid inhumane conditions.

36. Each of the Plaintiffs claim of the Defendants, separately and severally, compensatory damages in the amount of $100,000.00 , punitive damages in the amount to be determined by a jury, attorney's fees, costs and expenses of this litigation.

## COUNT II
### Eighth Amendment Violations

37. The Plaintiffs re-allege and reiterate each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

38. A State agent shall not be immune from civil liability in his personal capacity when the constitution of law of the United States or the constitution of Alabama, or the laws, rules or regulation of Alabama enacted or promulgated for the purpose of regulating the actives of a government agency require otherwise or when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

39. In order for there to be a violation by a prison official of the cruel and unusual punishments clause of the Federal Constitution's Eighth Amendment, (1) the deprivation alleged by a prisoner must be, objectively, sufficiently serious, that is, the official's act or omission must result in the denial of the minimal civilized measure of life's necessities, and for claims based on failure to prevent harm, prisoners must show that they are incarcerated under conditions posing a substantial risk of serious harm; and (2) since only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, the official must have a sufficiently culpable state of mind, consisting of deliberate indifference to prisoner health or safety.

40. Although the specific facts for each of the Plaintiffs differ slightly, the thrust of their eighth amendment claims is the same. Plaintiffs were forced to endure extreme conditions in both the hot weather and the cold weather due to the damage sustained to Cell Block B in September 2016.

41. Furthermore, the Plaintiffs were forced to endure unsanitary conditions due to the damage to Cell Block B's plumbing. Specifically, Plaintiffs were kept in small cells where toilets would often overflow sewage or would not flush at all.

42. Plaintiffs were often unable to use the sinks in their cells because the plumbing was damaged in the storm of April 2016 and was not properly repaired. Plaintiffs could not perform simple everyday functions such as brushing their teeth and having water to drink.

43. Plaintiffs were forced to endure lingering smoke from the combination of electrical fires, mattresses burning because they were set on fire by unruly inmates, and poor circulation, which led to enduring respiratory problems for each of the Plaintiffs.

44. In short, Plaintiffs were confined to segregation in a cell block without adequate protection from the elements, unsanitary plumbing conditions, unsafe air quality and limited access to crucial elements needed to survive, such as drinking water.

45. The Defendants Dunn, Estes, and the supervisory Defendants proximately caused the Plaintiffs to be injured and damaged by denying them their constitutional rights and by denying them the right to effective medical treatment. Moreover, the said Defendants, by housing the Plaintiffs in inhumane conditions, caused the Plaintiffs to be made sick and sore, and to suffer from various diseases, such as colds, bronchitis, and other breathing problems, caused the Plaintiffs to suffer mental anguish by making them live in inhumane conditions. Plaintiffs have been permanently damaged as a proximate result of exposure to the aforesaid inhumane conditions.

Respectfully submitted,

*/s/ Joseph Henry Rutledge, II*
Joseph Henry Rutledge, II (RUT021)
Attorneys for the Plaintiff

*/s/William E. Rutledge*
William Eugene Rutledge (RUT001)
Attorneys for the Plaintiff

**OF COUNSEL:**
The Rutledge Law Firm, LLC
Two Chase Corporate Drive
Suite 460
Birmingham, AL 35243
205/985-2411 T.
205/985-2412 F.
williamerutledge@aol.com
henry@rylaw.net

**JURY TRIAL DEMANDED**

The Plaintiffs demand a trial by struck jury.

/s/*Joseph Henry Rutledge, II*
Of Counsel

**NOTE TO CLERK:  Please hold service on fictitious Defendants.
PLEASE SERVE ALL OTHER DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:**

Jefferson S. Dunn, Commissioner
Alabama Department of Corrections
301 South Ripley Street
P.O. Box 301501
Montgomery, Alabama 36130-1501

Dewayne Estes, Warden
St. Clair Correctional Facility
1000 St. Clair Road
Springville, Alabama 35146

Steve Marshall
Alabama Attorney General
501 Washington Avenue
Montgomery, Alabama 36104